# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| DAVID SHORR, Derivatively on Behalf of THERAPEUTICSMD, INC., | ) ) ) | Civil Action No. |
| Plaintiff, | ) ) | DEMAND FOR JURY TRIAL |
| v. | ) ) | |
| ROBERT G. FINIZIO, DANIEL A. CARTWRIGHT, JOHN C.K. MILLIGAN, IV, BRIAN BERNICK, TOMMY G. THOMPSON, J. MARTIN CARROLL, JULES A. MUSING, COOPER C. COLLINS, ANGUS C. RUSSELL, NICHOLAS SEGAL, and ROBERT V. LAPENTA, JR., | ) ) ) ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| -and- | ) ) | |
| THERAPEUTICSMD, INC., a Nevada corporation, | ) ) ) | |
| Nominal Defendant. | ) ) ) | |

# VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND WASTE OF CORPORATE ASSETS

Plaintiff, by his attorneys, submits this Verified Stockholder Derivative Complaint for Breach of Fiduciary Duty and Waste of Corporate Assets.  Plaintiff alleges the following on information and belief, except as to the allegations specifically pertaining to plaintiff which are based on personal knowledge.  This complaint is also based on the investigation of plaintiff's counsel, which included, among other things, a review of public filings with the U.S. Securities and Exchange Commission ("SEC") and a review of news reports, press releases, and other publicly available sources.

## NATURE AND SUMMARY OF THE ACTION

1.      This is a stockholder derivative action brought by plaintiff on behalf of nominal defendant TherapeuticsMD, Inc. ("TherapeuticsMD" or the "Company") against certain of its officers and directors for breaches of fiduciary duties and violations of law.  These wrongs resulted in hundreds of millions of dollars in damages to TherapeuticsMD's reputation, goodwill, and standing in the business community.  Moreover, these actions have exposed the Company to millions of dollars in potential liability for violations of state and federal law.

2.      TherapeuticsMD is a pharmaceutical company focused on creating and commercializing products targeted at women, especially hormonal therapy drugs.  The Company is currently engaged in the research and development of hormonal therapy drugs for women using its proprietary hormone technology SYMBODA™.  TX-004HR, the Company's most important and advanced drug candidate in its pipeline, is an investigational drug product utilizing SYMBODA to treat vulvar and vaginal atrophy ("VVA") in postmenopausal women.  TX-004HR would introduce an applicator-free vaginal estradiol softgel capsule drug to the market for the treatment of moderate to severe dyspareunia, a symptom of VVA in postmenopausal women with vaginal linings that do not receive enough estrogen.  The ultimate goal of the drug is to alleviate vaginal dryness, irritation, painful urination, and pain (dyspareunia) or bleeding associated with sexual activity in postmenopausal women.

3.      It is a long, arduous, and expensive process to receive approval from the U.S. Food and Drug Administration ("FDA") to sell a drug in the United States.  The process requires lengthy, expensive, and time-consuming tests and trials.  The further TherapeuticsMD proceeds through the testing process, the larger, longer, and more exacting the drug trials become.  The first stage in the process is a Phase 1 trial which is where a company tests out a drug's safety, appropriate dosage, and side effects on a small group of people.  This is followed by a Phase 2

trial which uses a larger group of patients to test a drug's effectiveness and side effects.  Phase 3, normally the last phase in the approval process, uses the largest group of people.  Phase 3 clinical trials compare the drug to other commonly used treatments and provide further information on the drug's safety and efficacy.  According to FDA guidelines and pharmaceutical standards, these trials usually take several years to complete to determine the long-term effects of a drug on patients.

4.       In the third quarter of 2014, the Company announced that it was initiating its "Rejoice Trial," a randomized, multicenter, and double-blind Phase 3 clinical trial.  The Phase 3 trial would test three different doses of TX-004HR, 25-microgram (mcg), 10-mcg, and 4-mcg, against a placebo.  At great expense to TherapeuticsMD, the Company sought to assess the safety and efficacy of the drug to treat moderate to severe dyspareunia associated with VVA in this critical Phase 3 trial.  In addition, the Company considered the clinical trial an important litmus test of TherapeuticsMD's proprietary hormone technology, SYMBODA.  Despite FDA guidelines and pharmaceutical industry standards mandating lengthy studies during these Phase 3 trials, the Company instead invested in an abbreviated twelve-week trial of TX-004HR.  Once all patients had enlisted in the trial by June 2015, the Phase 3 Rejoice Trial began.  By December 2015, the Company had already completed the Rejoice Trial.  By the end of the TX-004HR trial, the Board of Directors (the "Board") of TherapeuticsMD had sanctioned the expenditure of $42 million in research and development of the drug.

5.       Despite the lack of long-term data supporting the drug's safety beyond the twelve-week trial, the Company submitted its New Drug Application ("NDA") for TX-004HR (conditionally-approved trade name Yuvvexy™) to the FDA on July 7, 2016.  In a press release, the Company announced its NDA submission, claiming that the NDA was "supported by the complete Yuvvexy clinical program, including positive results" of the Phase 3 Rejoice Trial.

6.       The Individual Defendant (as defined herein) continued to tout this Phase 3 study and its results.  From July 2016 through February 2017, they published a series of press releases, filed several Forms 10-Q, Forms 8-K, and its annual Form 10-K with the SEC, and hosted many earnings conference calls with analysts, touting the success of TX-004HR's Phase 3 clinical trial as a "significant corporate achievement."  Particularly, the Company asserted to the investing public that it completed a full clinical program for TX-004HR in accordance with current FDA guidelines and pharmaceutical industry standards, yielding "positive" and "robust" results.  The

Company further asserted that it was making excellent progress advancing its pipeline of drugs, including TX-004HR, and enhancing its commercial capabilities.

7.       However, defendants' positive assertions, touting TX-004HR's allegedly "robust" Phase 3 clinical trial, were improper.  On April 7, 2017, TherapeuticsMD received a letter from the FDA.   Through its ongoing review of the Company's NDA, the FDA had identified deficiencies with TX-004HR and the associated Phase 3 clinical trial that precluded discussion of labeling and post-marketing requirements or commitments of the drug.  Effectively, the FDA said that problems in the Rejoice Trial would prevent even a discussion of allowing the sale of TX-004HR.   Subsequently, on April 10, 2017, TherapeuticsMD published a press release announcing this setback, contradicting the Company's earlier positive statements.

8.       In the wake of this disclosure, TherapeuticsMD's stock plunged more than 19%, or $1.50 per share on April 10, 2017, to close at $6.20 compared to the previous trading day's closing of $7.70, erasing over $296 million in market capitalization.

9.       To make matters even worse for the stockholders, on May 5, 2017, TherapeuticsMD received a Complete Response Letter ("CRL") from the FDA rejecting the Company's NDA for TX-004HR.  The FDA expressed concerns with the lack of any long-term endometrial safety data associated with the mere twelve-week Phase 3 Rejoice Trial.  Contrary to the Company's public assertions, the Phase 3 trial of its primary drug candidate was incomplete and substandard, sacrificing the quality of long-term safety data for expediency.  On May 8, 2017, TherapeuticsMD issued a press release announcing the FDA's rejection of TX-004HR's NDA.  The FDA's rejection of the Company's NDA for TX-004HR could potentially stall the drug's release for years, or indefinitely.

10.      On May 8, 2017, in the wake of this additional disclosure, TherapeuticsMD's shares fell another 10.49% or $0.50 per share, to close at $4.18 a share.  By this point, the Company's market capitalization had plummeted over $668 million, or 43.95%, since April 7, 2017, before the Company announced deficiencies in its Phase 3 clinical trial of TX-004HR.

11.      Further, as a direct result of this unlawful course of conduct, TherapeuticsMD is now the subject of a federal securities class action lawsuit filed in the United States District Court for the Southern District of Florida on behalf of investors who purchased TherapeuticsMD's shares.  Plaintiff now brings this action on behalf of the Company to rectify the harm to the Company for which the defendants are responsible.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. §1332 in that plaintiff and defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.   This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

13.     This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

14.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 because: (i) TherapeuticsMD maintains its principal place of business in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, and aiding and abetting and conspiracy in violation of fiduciary duties owed to TherapeuticsMD, occurred in this District; and (iv) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

**Plaintiff**

15.     Plaintiff David Shorr was a stockholder of TherapeuticsMD at the time of the wrongdoing complained of, has continuously been a stockholder since that time, and is a current TherapeuticsMD stockholder.  Plaintiff is a citizen of Illinois.

**Nominal Defendant**

16.     Nominal Defendant TherapeuticsMD is a Nevada corporation with principal executive offices located at 6800 Broken Sound Parkway NW, Third Floor, Boca Raton, Florida. Accordingly, TherapeuticsMD is a citizen of Nevada and Florida.  TherapeuticsMD is a women's health care company focused on creating and commercializing products targeted exclusively for women.  TherapeuticsMD is currently concentrated on pursuing the regulatory approvals and pre-commercialization activities necessary for commercialization of hormone therapy

pharmaceutical products.  TherapeuticsMD develops a variety of hormonal therapies utilizing its proprietary SYMBODA technology, a solubilized female hormone technology for formulation of estradiol and progesterone hormones.  As of December 31, 2016, TherapeuticsMD had 159 full time employees.   On October 4, 2011, TherapeuticsMD closed a reverse merger with vitaMedMD, LLC ("VitaMed") pursuant to which VitaMed became TherapeuticsMD's wholly owned subsidiary.

**Defendants**

17.     Defendant Robert G. Finizio ("Finizio") is TherapeuticsMD's Chief Executive Officer ("CEO") and a director and has been since October 2011.  Defendant Finizio was also a Co-Founder of VitaMed and was VitaMed's CEO and a director from April 2008 to October 2011.  Defendant Finizio is named as a defendant in a related securities action complaint that alleges he violated sections 10(b) and 20(a) of the Securities Exchange Act of 1934.  Defendant Finizio knowingly, recklessly, or with gross negligence made improper statements in the Company's press releases and public filings concerning the approval prospects, safety, and commercial viability of the Company's developmental drug, TX-004HR.  TherapeuticsMD paid defendant Finizio the following compensation as an executive:

| Year | Salary | Bonus | Non-Equity Incentive Plan Compensation | All Other Compensation | Total |
|------|--------|-------|----------------------------------------|------------------------|-------|
| 2016 | $600,000 | $50,000 | $600,000 | $13,347 | $1,263,347 |

Defendant Finizio is a citizen of Florida.

18.     Defendant Daniel A. Cartwright ("Cartwright") is TherapeuticsMD's Chief Financial Officer and Treasurer and has been since October 2011.  Defendant Cartwright was also TherapeuticsMD's Vice President of Finance from October 2011 to April 2013.  Defendant Cartwright was VitaMed's Chief Financial Officer from July 2011 to October 2011.  Defendant Cartwright knowingly, recklessly, or with gross negligence made improper statements in the Company's press releases and public filings concerning the approval prospects, safety, and commercial viability of the Company's developmental drug, TX-004HR.  TherapeuticsMD paid defendant Cartwright the following compensation as an executive:

| Year | Salary | Non-Equity Incentive Plan Compensation | All Other Compensation | Total |
|------|--------|----------------------------------------|------------------------|-------|
| 2016 | $375,000 | $262,500 | $14,066 | $651,566 |

Defendant Cartwright is a citizen of Florida.

19.     Defendant John C.K. Milligan, IV ("Milligan") is TherapeuticsMD's President, Secretary, and a director and has been since October 2011.  Defendant Milligan was VitaMed's President and a director from December 2008 to October 2011.  Defendant Milligan knowingly, recklessly, or with gross negligence made improper statements in the Company's press releases and public filings concerning the approval prospects, safety, and commercial viability of the Company's developmental drug, TX-004HR.   TherapeuticsMD paid defendant Milligan the following compensation as an executive:

| Year | Salary | Non-Equity Incentive Plan Compensation | All Other Compensation | Total |
|------|--------|----------------------------------------|------------------------|-------|
| 2016 | $450,000 | $315,000 | $19,079 | $784,079 |

Defendant Milligan is a citizen of Florida.

20.     Defendant Brian Bernick ("Bernick") is TherapeuticsMD's Chief Clinical Officer and has been since November 2013, and a director and has been since October 2011.  Defendant Bernick was also TherapeuticsMD's Chief Medical Officer from February 2012 to November 2013.  Defendant Bernick was a Co-Founder of VitaMed and was also a VitaMed director from April 2008 to October 2011.  Defendant Bernick is named as a defendant in a related securities action complaint that alleges he violated sections 10(b) and 20(a) of the Securities Exchange Act of 1934.  Defendant Bernick knowingly, recklessly, or with gross negligence made improper statements in the Company's press releases and public filings concerning the approval prospects, safety, and commercial viability of the Company's developmental drug, TX-004HR. TherapeuticsMD paid defendant Bernick the following compensation as a director:

| Year | All Other Compensation | Total |
|------|------------------------|-------|
| 2016 | $637,500 | $637,500 |

Defendant Bernick is a citizen of Florida.

21.     Defendant Tommy G. Thompson ("Thompson") is TherapeuticsMD's Chairman of the Board and a director and has been since May 2012.  Defendant Thompson knowingly or recklessly made improper statements in the Company's press releases and public filings concerning the approval prospects, safety, and commercial viability of the Company's developmental drug, TX-004HR.  TherapeuticsMD paid defendant Thompson the following compensation as a director:

| Year | Fees Paid in Cash | Stock Awards | Total |
|------|-------------------|--------------|-------|
| 2016 | $114,250 | $89,503 | $203,753 |

Defendant Thompson is a citizen of Wisconsin.

22.     Defendant J. Martin Carroll ("Carroll") is a TherapeuticsMD director and has been since March 2015.  Defendant Carroll knowingly or recklessly made improper statements in the Company's press releases and public filings concerning the approval prospects, safety, and commercial viability of the Company's developmental drug, TX-004HR.  TherapeuticsMD paid defendant Carroll the following compensation as a director:

| Year | Fees Paid in Cash | Stock Awards | Total |
|------|-------------------|--------------|-------|
| 2016 | $74,250 | $89,503 | $163,753 |

Defendant Carroll is a citizen of Pennsylvania.

23.     Defendant Jules A. Musing ("Musing") is a TherapeuticsMD director and has been since May 2013.  Defendant Musing knowingly or recklessly made improper statements in the Company's press releases and public filings concerning the approval prospects, safety, and commercial viability of the Company's developmental drug, TX-004HR.  TherapeuticsMD paid defendant Musing the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
|-------------|-------------------|--------------|-------|
| 2016 | $64,500 | $89,503 | $154,003 |

Defendant Musing is a citizen of Florida.

24.     Defendant Cooper C. Collins ("Collins") is a TherapeuticsMD director and has been since February 2012.   Defendant Collins is a member of TherapeuticsMD's Audit Committee and has been since at least April 2016.  Defendant Collins knowingly or recklessly made improper statements in the Company's press releases and public filings concerning the

approval prospects, safety, and commercial viability of the Company's developmental drug, TX-004HR.  TherapeuticsMD paid defendant Collins the following compensation as a director:

| Year | Fees Paid in Cash | Stock Awards | Total |
|------|-------------------|--------------|-------|
| 2016 | $83,500 | $89,503 | $173,003 |

Defendant Collins is a citizen of Texas.

25.     Defendant Angus C. Russell ("Russell") is a TherapeuticsMD director and has been since March 2015.  Defendant Russell was also a member of TherapeuticsMD's Audit Committee from at least April 2016 to at least April 2017.  Defendant Russell knowingly or recklessly made improper statements in the Company's press releases and public filings concerning the approval prospects, safety, and commercial viability of the Company's developmental drug, TX-004HR.   TherapeuticsMD paid defendant Russell the following compensation as a director:

| Year | Fees Paid in Cash | Stock Awards | Total |
|------|-------------------|--------------|-------|
| 2016 | $71,750 | $89,503 | $161,253 |

Defendant Russell is a citizen of Florida.

26.     Defendant Nicholas Segal ("Segal") is a TherapeuticsMD director and has been since February 2012.  Defendant Segal is also a member of TherapeuticsMD's Audit Committee and has been since at least April 2016.  Defendant Segal knowingly or recklessly made improper statements in the Company's press releases and public filings concerning the approval prospects, safety, and commercial viability of the Company's developmental drug, TX-004HR.  TherapeuticsMD paid defendant Segal the following compensation as a director:

| Year | Fees Paid in Cash | Stock Awards | Total |
|------|-------------------|--------------|-------|
| 2016 | $68,250 | $89,503 | $157,753 |

Defendant Segal is a citizen of New York.

27.     Defendant Robert V. LaPenta, Jr. ("LaPenta") is a TherapeuticsMD director and has been since February 2012.  Defendant LaPenta is also the Chairman of TherapeuticsMD's Audit Committee and a member of that committee and has been since at least April 2016.  Defendant LaPenta knowingly or recklessly made improper statements in the Company's press releases and public filings concerning the approval prospects, safety, and commercial viability of

the Company's developmental drug, TX-004HR.  TherapeuticsMD paid defendant LaPenta the following compensation as a director:

| Year | Fees Paid in Cash | Stock Awards | Total |
|------|-------------------|--------------|-------|
| 2016 | $88,000 | $89,503 | $177,503 |

Defendant LaPenta is a citizen of New York.

28.     The defendants identified in ¶¶17-20 are referred to herein as the "Officer Defendants."  The defendants identified in ¶¶17, 19-27 are referred to herein as the "Director Defendants."   The defendants identified in ¶¶24-27 are referred to herein as the "Audit Committee Defendants."  Collectively, the defendants identified in ¶¶17-27 are referred to herein as the "Individual Defendants."

### **DUTIES OF THE INDIVIDUAL DEFENDANTS**

**Fiduciary Duties**

29.     By reason of their positions as officers and directors of the Company, each of the Individual Defendants owed and owe TherapeuticsMD and its stockholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage TherapeuticsMD in a fair, just, honest, and equitable manner.   The Individual Defendants were and are required to act in furtherance of the best interests of TherapeuticsMD and not in furtherance of their personal interest or benefit.

30.     To discharge their duties, the officers and directors of TherapeuticsMD were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the financial affairs of the Company.  By virtue of such duties, the officers and directors of TherapeuticsMD were required to, among other things:

(a)     accurately guide the Company's stockholders and the public when speaking about TherapeuticsMD's business prospects, including the approval prospects, commercial viability, and safety of its developmental drugs;

(b)     conduct the affairs of the Company in an efficient, business-like manner in compliance with all applicable laws, rules, and regulations so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the TherapeuticsMD's stock; and

(c)     remain informed as to how TherapeuticsMD conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with applicable laws.

**Breaches of Duties**

31.     The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as officers and directors of TherapeuticsMD, the absence of good faith on their part, and a reckless disregard for their duties to the Company that the Individual Defendants were aware or reckless in not being aware posed a risk of serious injury to the Company.

32.     The Individual Defendants breached their duty of loyalty and good faith by allowing defendants to cause, or by themselves causing, the Company to engage in making improper statements to the public and TherapeuticsMD's stockholders, improper practices that wasted the Company's assets, and caused TherapeuticsMD to incur substantial damage.

33.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of TherapeuticsMD, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein.  The Individual Defendants also failed to prevent the other Individual Defendants from taking such illegal actions.  As a result, and in addition to the damage the Company has already incurred, TherapeuticsMD has expended, and will continue to expend, significant sums of money.

**Additional Duties of the Audit Committee Defendants**

34.     In addition to these duties, the Audit Committee Defendants, defendants LaPenta, Russell, Collins, and Segal, owed specific duties to TherapeuticsMD to assist the Board in overseeing "the accounting and financial reporting processes of the Company and audits of the financial statements of the Company."  Further, the Audit Committee is responsible to the Board to ensure "[t]he integrity of the Company's financial statements, [t]he Company's compliance with legal and regulatory requirements..., [and] [t]he performance of the Company's internal audit function...."  Moreover the Audit Committee's Charter specifically tasks the Audit Committee with reviewing "the Company's financial statements."  The Audit Committee Charter also states that its members must "[d]iscuss with management ... the Company's major financial

risk exposures, the guidelines and policies by which risk assessment and management is undertaken, and the steps management has taken to monitor and control risk exposure."

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

35.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their common plan or design.  In addition to the wrongful conduct herein alleged as giving rise to primary liability, the Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

36.     During all times relevant hereto, the Individual Defendants, collectively and individually, initiated a course of conduct that was designed to and did: (i) deceive the investing public, including stockholders of TherapeuticsMD, regarding the Individual Defendants' management of TherapeuticsMD's operations, and the approval prospects, safety, and commercial viability of its product, TX-004HR; and (ii) enhance the Individual Defendants' executive and directorial positions at TherapeuticsMD and the profits, power, and prestige that the Individual Defendants enjoyed as a result of holding these positions.  In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants, collectively and individually, took the actions set forth herein.

37.     The Individual Defendants engaged in a conspiracy, common enterprise, and/or common course of conduct.   During this time, the Individual Defendants caused TherapeuticsMD to issue improper statements about TX-004HR.

38.     The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to disguise the Individual Defendants' violations of law, breaches of fiduciary duty, and waste of corporate assets; and to conceal adverse information concerning the Company's operations, financial condition, and future business prospects.

39.     The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company to purposefully or recklessly release improper statements.  Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

40.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein.  In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with knowledge of the primary wrongdoing, substantially assisted in the accomplishment of that wrongdoing, and was aware of his overall contribution to and furtherance of the wrongdoing.

## **FACTUAL BACKGROUND**

41.     TherapeuticsMD is a pharmaceutical company that develops and commercializes hormonal therapies targeted at women.  In addition to its hormone therapy drug candidate development, the Company manufactures and distributes branded and generic prescription prenatal vitamins, as well as over-the-counter iron supplements.  TherapeuticsMD uses its proprietary SYMBODA hormone therapy technology to enable delivery of bio-identical hormones to patients.  According to TherapeuticsMD's 2016 Annual Report on Form 10-K filed with the SEC on February 28, 2017 (the "2016 Form 10-K"), the Company had a net loss of $89.8 million on revenue of $19.3 million.  As a result, TherapeuticsMD is dependent on raising money from the market, either through stock sales or debt issuances, in order to continue to fund its operations.  The Company's stock price, therefore, is of critical importance to how much and on what terms TherapeuticsMD can raise money.  Both its stock price and other ways to raise money are dependent on purchasers and lenders' ability to trust that the Company and its fiduciaries are truthful when discussing TherapeuticsMD's drug programs.

42.     TherapeuticsMD is currently developing TX-004HR to treat moderate to severe dyspareunia, a symptom of VVA in postmenopausal women.  TX-004HR is one of the most developed drugs in the Company's pipeline and would be the first of its hormone therapy drug candidates to reach the U.S. market.  TX-004HR is vital to TherapeuticsMD's eventual profitability and growth and, as such, the Individual Defendants and the market in general, have paid particularly close attention to the drug and its clinical developments.

43.     In September 2014, TherapeuticsMD began patient enrollment for its Phase 3 Rejoice Trial of TX-004HR.  Once the Company had enrolled approximately 700 patients in its trial by June 2015, it began a short twelve-week trial across the United States and Canada.

44.     In December 2015, upon completion of the Rejoice Trial, the Company lauded the trial, highlighting that the "highly statistically significant efficacy results and safety profile from the Rejoice Trial [were] very promising."

## IMPROPER STATEMENTS

45.     Defendants' improper statements began on July 7, 2016, when TherapeuticsMD announced in a press release that it submitted its NDA for TX-004HR with the FDA.   The Company asserted that its Phase 3 clinical trial of TX-004HR was "complete" after just twelve weeks, and had yielded "positive results."  The press release stated:

> TherapeuticsMD, Inc. (NYSE MKT: TXMD), an innovative women's healthcare company, announced today that it has submitted its New Drug Application (NDA) for Yuvvexy with the U.S. Food and Drug Administration (FDA).  *The NDA submission is supported by the complete Yuvvexy clinical program, including positive results of the recently completed phase 3 Rejoice Trial.*  The NDA submission includes all three doses of Yuvvexy (4 mcg, 10 mcg and 25 mcg) that were evaluated in the Rejoice Trial.

> Yuvvexy, the conditionally-approved trade name for the company's TX-004HR drug candidate, is an applicator-free, vaginal, estradiol softgel capsule being proposed for the treatment of moderate-to-severe vaginal pain during sexual intercourse (dyspareunia), a symptom of vulvar and vaginal atrophy (VVA) due to menopause.

46.     On August 4, 2016, TherapeuticsMD issued a press release entitled "TherapeuticsMD Announces Second Quarter 2016 Financial Results."  The press release, in its discussion of the Company's NDA submission for TX-004HR, again highlighted "positive results of the recently completed phase 3 Rejoice Trial."  In discussing the move to submit an NDA for TX-004HR after a mere twelve-week Phase 3 clinical trial, defendant Finizio averred that the results of the trial were "transformative" for the Company.  The press release stated:

> "*The second quarter was transformative for our company, with the submission of our NDA for Yuvvexy as a highly-differentiated potential treatment for moderate to severe dyspareunia, a symptom of VVA, due to menopause,*" said *TherapeuticsMD CEO Robert G. Finizio.   "The Yuvvexy NDA reflects a significant corporate achievement* and we are thankful for the contributions of everyone involved.  As we prepare for future commercialization of Yuvvexy, if approved, we also look forward to the topline data in the fourth quarter of 2016 from our Replenish Trial for TX-001HR, our second novel hormone therapy program....  We are very pleased with our progress this year."

47.     Also, on August 4, 2016, the Company held an earnings conference call with analysts and investors to discuss the financial results of the second fiscal quarter of 2016.  Without highlighting the lack of long-term safety data, the Company's CEO and director,

defendant Finizio, claimed the results of the Phase 3 clinical trial of TX-004HR were "robust," reflective of a major milestone for the Company.  He stated:

> On July 7, we submitted our new drug application for Yuvvexy, the conditionally approved trade name for TX-004HR, reflecting a major achievement for our company.  ***The NDA is based upon the robust results of our clinical program, including our positive pivotal Phase III Rejoice Trial***.  Yuvvexy has many differentiating features that if approved enable it to potentially become a best-in-class treatment for postmenopausal women suffering from moderate to severe dyspareunia, associated with vulvovaginal atrophy or I'll refer as to VVA.

48.     Defendant Bernick, the Company's Chief Clinical Officer, also downplaying the lack of long-term safety data, stated that the Company's Rejoice trial represented a "full clinical program ... in accordance with current FDA guidelines."  He reiterated defendant Finizio's statements, stating:

> Our NDA for Yuvvexy was officially submitted on July 7, and we expect the 10-month review process for FDA guidelines.  ***Our NDA is anchored on the robust results of our full clinical program designed in accordance with current FDA guidelines.***  This 505(b)(2) submission includes all three doses of Yuvvexy 4-microgram, 10-microgram, and 25-microgram that were evaluated in the Rejoice Trial.  We have also proposed new modified labeling for Yuvvexy including remove of the black-box warning, and we look forward to the FDA's feedback.

49.     The Individual Defendants continued their improper statements in a September 19, 2016 press release entitled "TherapeuticsMD Announces FDA Acceptance of New Drug Application (NDA) and Prescription Drug User Fee Act (PDUFA) Date for Yuvvexy™ (TX-004HR)."  Without more than twelve weeks of safety data to examine, the Company asserted that it had submitted to the FDA in its NDA a "complete Yuvvexy clinical program" for TX-004HR, with "positive results."  This press release stated:

> TherapeuticsMD, Inc. (NYSE MKT: TXMD), an innovative women's healthcare company, today announced the acceptance of the NDA for Yuvvexy, the conditionally-approved trade name for TX-004HR, by the U.S. Food and Drug Administration (FDA).  Yuvvexy is an investigational bio-identical 17β-estradiol vaginal softgel capsule for the treatment of moderate-to-severe vaginal pain during sexual intercourse (dyspareunia), a symptom of vulvar vaginal atrophy (VVA) in postmenopausal women.

> The NDA acceptance by the FDA in its 74-day letter indicates that the application is sufficiently complete to permit a substantive review.  The PDUFA target action date for the completion of the FDA's review is May 7, 2017.

- 14 -

"The acceptance of the NDA for Yuvvexy is an important milestone for TherapeuticsMD as we pursue our goal to provide women with novel healthcare solutions that address their needs throughout life," said TherapeuticsMD CEO Robert G. Finizio.  "If approved, Yuvvexy has the potential to be a highly differentiated treatment option for the 32 million postmenopausal women in the United States who suffer from symptoms of VVA.  Yuvvexy is the first product candidate from our pipeline of novel hormone therapies in development to address women's unmet health needs."

*The 505(b)(2) NDA submission for Yuvvexy is supported by the complete Yuvvexy clinical program, including positive results of the phase 3 Rejoice Trial, which evaluated the effect of three doses of Yuvvexy (4 mcg, 10 mcg and 25 mcg) compared to placebo from baseline to week 12.*  The results demonstrated statistically significant and clinically meaningful improvements in dyspareunia, a co-primary endpoint, and vaginal dryness, a secondary endpoint. Statistically significant results were seen as early as two weeks of treatment.  The NDA includes all three doses of Yuvvexy that were evaluated in the Rejoice Trial.

50.    On November 3, 2016, TherapeuticsMD issued a press release entitled "TherapeuticsMD Announces Third Quarter 2016 Financial Results."  The press release again touted the Company's allegedly "complete" clinical program yielding "positive results," without highlighting that the Rejoice trial had only taken twelve weeks.  The press release stated:

**Third Quarter and Recent Developments**

Announced acceptance of a New Drug Application (NDA) by the U.S. Food and Drug Administration (FDA) for TX-004HR (conditionally approved trade name Yuvvexy™), the company's investigational applicator-free estradiol vaginal softgel capsule for the treatment of moderate-to-severe vaginal pain during sexual intercourse (dyspareunia), a symptom of vulvar and vaginal atrophy (VVA) due to menopause.  *The NDA is supported by the complete TX-004HR clinical program, including positive phase 3 results with all three doses of TX-004HR (4 mcg, 10 mcg and 25 mcg) that were evaluated in the Rejoice Trial.*  The FDA's Prescription Drug User Fee Act (PDUFA) target action date for the NDA is May 7, 2017.

\*   \*   \*

*"We are making excellent progress this year advancing our pipeline and enhancing our commercial capabilities focused on women's health.  During the quarter, we successfully completed the submission of our NDA for TX-004HR as a novel treatment for moderate to severe dyspareunia, a symptom of VVA due to menopause, and we continued ongoing pre-commercialization activities for this important product,"* said TherapeuticsMD CEO Robert G. Finizio.

- 15 -

51.     Defendant Finizio reiterated these improper statements in a November 3, 2016 earnings conference call with analysts and investors when discussing the Company's third fiscal quarter.  In particular, he stated:

> On July 7, we submitted our new drug application, also known as an NDA, for TX-004HR or Yuvvexy, our conditionally-approved trade name.  **On September 19, our NDA was officially accepted by the FDA and we have received a PDUFA target action date of May 7, 2017.  The NDA is based upon the complete results of TX-004HR clinical program including our positive pivotal Phase 3 Rejoice Trial.**

52.     On November 4, 2016, the Company filed its Quarterly Report on Form 10-Q for the quarter ended September 30, 2016, with the SEC.  TherapeuticsMD, under sanction by the Individual Defendants, told stockholders that the clinical program for TX-004HR was complete with positive results despite the lack of long-term safety data.   In the section entitled "Management's Discussion and Analysis of Financial Condition and Results of Operations – Research and Development," reiterated the Individual Defendants' improper statements concerning the submission of the NDA for TX-004HR, stating:

> We submitted the NDA for TX-004HR with the FDA on July 7, 2016.  The FDA determined that the NDA is sufficiently complete to permit a substantive review and accepted the NDA for filing.   The PDUFA target action date for the completion of the FDA's review is May 7, 2017.  **The NDA submission was supported by the complete TX-004HR clinical program, including positive results of the recently completed phase 3 REJOICE Trial.**  The NDA submission included all three doses of TX-004HR (4 mcg, 10 mcg and 25 mcg) that were evaluated in the REJOICE Trial.  If approved, the 4 mcg formulation would represent a lower effective dose than the currently available VVA therapies approved by the FDA.

53.     On February 23, 2017, TherapeuticsMD issued yet another press release entitled "TherapeuticsMD Announces Fourth Quarter and Full-Year 2016 Financial Results." Suppressing the lack of long-term safety data in its Phase 3 clinical trial of TX-004HR, the Company claimed its NDA was supported by a "complete" clinical program with "positive results."  Defendant Finizio further stated that TherapeuticsMD was planning the launch of TX-004HR with regulatory approval, claiming "significant advancements" of its pipeline candidates. The press release stated:

> 2016 and Recent Developments

\* \* \*

Submitted an NDA for TX-004HR, the company's applicator-free estradiol vaginal softgel capsule drug candidate for the treatment of moderate-to-severe vaginal pain during sexual intercourse (dyspareunia), a symptom of vulvar and vaginal atrophy (VVA) due to menopause. *The NDA is supported by the complete TX-004HR clinical program, including positive results from all three doses of TX-004HR (4 mcg, 10 mcg and 25 mcg) that were evaluated in the phase 3 Rejoice Trial.* The FDA's Prescription Drug User Fee Act (PDUFA) target action date for the NDA is May 7, 2017.

\* \* \*

*"During 2016, we made significant advancements with our two late-stage pipeline candidates while we pursued our goal to bring new healthcare solutions to women to help manage their menopause symptoms," said TherapeuticsMD CEO Robert G. Finizio. "As we look forward to 2017, we are planning the launch of TX-004HR, pending regulatory approval, as a highly differentiated new treatment for moderate-to-severe dyspareunia, a symptom of VVA due to menopause."*

54.    Subsequently, on February 28, 2017, the Company filed its 2016 Form 10-K with the SEC.  The 2016 Form 10-K reiterated the above material omissions and misstatements by affirming again that the clinical program for TX-004HR were complete with positive results, despite a lack of safety data beyond a mere twelve weeks.  In the section entitled "Our Hormone Therapy Drug Candidates – *TX-004HR*" Individual Defendants reiterated statements they made regarding the Company's NDA submission for TX-004HR stating:

We submitted the NDA for TX-004HR with the FDA on July 7, 2016.  The FDA determined that the NDA is sufficiently complete to permit a substantive review and accepted the NDA for filing.  The PDUFA target action date for the completion of the FDA's review is May 7, 2017.  *The NDA submission was supported by the complete TX-004HR clinical program, including positive results of the phase 3 REJOICE Trial.*  The NDA submission included all three doses of TX-004HR (4 mcg, 10 mcg and 25 mcg) that were evaluated in the REJOICE Trial.  If approved, the 4 mcg formulation would represent a lower effective dose than the currently available VVA therapies approved by the FDA.

55.    The statements referenced in ¶¶45-54 were improper because they omitted material information regarding the Phase 3 Rejoice Trial of TX-004HR, rendering the statements materially false and misleading.  TherapeuticsMD failed to disclose material adverse facts about the TX-004HR's approval prospects, safety, and commercial viability.  The Company failed to

mention that the Rejoice Trial did not consider long-term effects of the drug, only capturing a mere twelve weeks of data.  The FDA will often only approve NDAs for drugs that have completed Phase 3 clinical trials encompassing several years of data demonstrating that there are no long-term effects making the drug unsafe for the public.  Specifically, the Individual Defendants made or allowed the following improper statements to be made: (i) the Company had submitted a "complete" clinical program for TX-004HR in its NDA to the FDA; (ii) the results of the Phase 3 trial were "positive" and "robust"; and (iii) the Phase 3 trial was in accordance with FDA guidelines.  Ultimately, the statements were improper because the Individual Defendants did not disclose the fact that TherapeuticsMD's substandard and woefully short Phase 3 clinical trial could jeopardize the chances that TX-004HR would meet FDA guidelines and receive approval.

### THE TRUTH EMERGES

56.     The truth behind the Company's business prospects and Individual Defendants' wrongdoing began to emerge on April 7, 2017.  On this date, TherapeuticsMD received a letter from the FDA placing a hold on the Company's NDA.  The following Monday, April 10, 2017, the Company issued a press release revealing that, as part of the FDA's ongoing review of the Company's NDA for TX-004HR, the FDA had identified deficiencies that precluded discussion of labeling and postmarketing requirements or commitments at that time.  The press release stated:

> TherapeuticsMD, Inc. (NYSE MKT: TXMD), an innovative women's healthcare company, today announced that, on April 7, 2017, the Company received a letter *from the U.S. Food and Drug Administration (FDA) stating that, as part of the FDA's ongoing review of the Company's new drug application (NDA) for TX-004HR*, the Company's applicator-free vaginal estradiol softgel drug candidate for the treatment of moderate to severe dyspareunia (vaginal pain during sexual intercourse), a symptom of vulvar and vaginal atrophy (VVA), in post-menopausal women, *the FDA has identified deficiencies that preclude discussion of labeling and postmarketing requirements/commitments at this time*.  The letter states that the notification does not reflect a final decision on the information under review.
>
> *The letter does not specify the deficiencies identified by the FDA and at this time the Company is not aware of the nature of the deficiencies.*  The Company intends to work with the FDA to understand the nature of the deficiencies and resolve them as quickly as possible.

*The FDA previously set a target action date under the Prescription Drug User Fee Act (PDUFA) of May 7, 2017 to complete the FDA's review of the NDA and had communicated to the Company the FDA's target date of April 9, 2017 for communicating to the Company proposed labeling and/or postmarketing requirements/commitments in accordance with FDA's PDUFA Reauthorization Performance Goals And Procedures – Fiscal Years 2013 Through 2017*.

57.     That same day, the Company filed a Current Report on Form 8-K with the SEC that reiterated the announcement made in the press release.  In a section entitled "Other Events," the Form 8-K stated:

On July 7, 2016, TherapeuticsMD, Inc., a Nevada corporation (the "<u>Company</u>"), submitted to the U.S. Food and Drug Administration (the "<u>FDA</u>") a New Drug Application (the "<u>NDA</u>") under Section 505(b)(2) of the Federal Food, Drug, and Cosmetic Act for three doses of TX-004HR, the Company's applicator-free vaginal estradiol softgel drug candidate for the treatment of moderate to severe dyspareunia (vaginal pain during sexual intercourse), a symptom of vulvar and vaginal atrophy (VVA), in post-menopausal women.  The submission was accepted by the FDA and the FDA set a target action date under the Prescription Drug User Fee Act ("<u>PDUFA</u>") of May 7, 2017 to complete the FDA's review of the NDA.  *In a letter dated September 19, 2016, the FDA notified the Company of the FDA's target date of April 9, 2017 for communicating to the Company proposed labeling and/or postmarketing requirements/commitments in accordance with FDA's PDUFA Reauthorization Performance Goals And Procedures – Fiscal Years 2013 Through 2017.*

*On April 7, 2017, the Company received a letter from the FDA (the "Letter") stating that, as part of its ongoing review of the NDA, the FDA has identified deficiencies that preclude discussion of labeling and postmarketing requirements/commitments at this time.  The Letter states that it does not reflect a final decision on the information under review.  The Letter does not specify the deficiencies identified by the FDA and at this time the Company is not aware of the nature of the deficiencies.*  The Company intends to work with the FDA to understand the nature of the deficiencies and resolve them as quickly as possible.

58.     Immediately following these announcements, TherapeuticsMD's stock declined more than 19%, or $1.50 per share on April 10, 2017, to close at $6.20 compared to the previous trading day's closing of $7.70, erasing over $296 million in market capitalization.

59.     The FDA's final decision concerning the Company's NDA for TX-004HR came on May 5, 2017.  The FDA sent TherapeuticsMD a CRL formally rejecting the Company's NDA for TX-004HR.  Noting the critical lack of data in the Company's twelve-week Phase 3 Rejoice Trial, the FDA stated that it could not approve TX-004HR without any long-term endometrial

safety data.  Subsequently, the Company filed a Current Report on Form 8-K with the SEC and issued a press release on May 8, 2017, announcing the FDA's rejection of TX-004HR's NDA. The press release stated:

> TherapeuticsMD, Inc. (NYSE MKT: TXMD), an innovative women's healthcare company, today announced that it received a Complete Response Letter (CRL) from the U.S. Food and Drug Administration (FDA) regarding the New Drug Application (NDA) for TX-004HR, the company's investigational applicator-free estradiol vaginal softgel capsule for the treatment of moderate-to-severe vaginal pain during sexual intercourse (dyspareunia), a symptom of vulvar and vaginal atrophy (VVA) due to menopause.
>
> In the CRL, the only approvability concern raised by the FDA was **the lack of long-term endometrial safety data for TX004HR beyond the 12-weeks studied in the pivotal phase 3 Rejoice Trial.**  No cases of endometrial hyperplasia were observed in the Rejoice Trial at the end of week 12 for all the doses studied and included in the NDA.
>
> The CRL did not identify any issues related to the efficacy of TX-004HR and did not identify any approvability issues related to chemistry, manufacturing, and controls.
>
> The Company believes that the NDA was approvable as filed and intends to meet with the FDA as soon as possible to address the concerns raised by the FDA.
>
> "While we are disappointed that the NDA for TX-004HR was not approved at this time and respectfully disagree with the FDA's decision, we believe there are multiple paths forward to address the concerns raised by the FDA.  The FDA has encouraged us to request a meeting to discuss our path forward and we intend to meet with the FDA as quickly as possible," said TherapeuticsMD CEO Robert G. Finizio….

60.     On this news, TherapeuticsMD's shares fell an additional 10.49% or $0.50 per share, to close at $4.18 a share on May 8, 2017.  In total, the Company's market capitalization had plummeted over $668 million, or 43.95%, since April 7, 2017, before the Company announced deficiencies in its Phase 3 clinical trial of TX-004HR.

## DAMAGES TO THERAPEUTICSMD

61.     As a result of the Individual Defendants' improprieties, TherapeuticsMD disseminated improper, public statements concerning the approvability, safety, and commercial viability of TX-004HR.   These improper statements have devastated TherapeuticsMD's credibility as reflected by the Company's over $668 million, or 43.95%, market capitalization loss.

62.     TherapeuticsMD's improper statements also damaged its reputation within the business community and in the capital markets.  In addition to price, TherapeuticsMD's current and potential investors will consider the Company's ability to accurately value its business prospects and evaluate the approvability, safety, and commercial viability of the developmental drugs in its pipeline.  The Company requires a substantial amount of cash to complete the clinical development and commercialization of its drugs.  Securing additional financing is vital to continuing the clinical trials of its drug candidates as the Company operates at a loss throughout the hormone drug development process.  TherapeuticsMD's ability to raise equity capital or debt on favorable terms in the future is now impaired.  In addition, the Company stands to incur higher marginal costs of capital and debt because the improper statements and misleading projections disseminated by the Individual Defendants have materially increased the perceived risks of investing in and lending money to TherapeuticsMD.

63.     Further, as a direct and proximate result of the Individual Defendants' actions, TherapeuticsMD has expended, and will continue to expend, significant sums of money.  Such expenditures include, but are not limited to:

(a)     costs incurred from defending and paying any settlement in the class action for violations of federal securities laws;

(b)     costs incurred from conducting the clinical trials on TX-004HR despite the serious deficiencies with the drug's clinical program; and

(c)     costs incurred from compensation and benefits paid to the defendants who have breached their duties to TherapeuticsMD.

**<u>DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS</u>**

64.     Plaintiff brings this action derivatively in the right and for the benefit of TherapeuticsMD to redress injuries suffered, and to be suffered, by TherapeuticsMD as a direct result of breaches of fiduciary duty, waste of corporate assets, and violations of the law, as well as the aiding and abetting thereof, by the Individual Defendants.  TherapeuticsMD is named as a nominal defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

65.     Plaintiff will adequately and fairly represent the interests of TherapeuticsMD in enforcing and prosecuting its rights.

66.     Plaintiff was a stockholder of TherapeuticsMD at the time of the wrongdoing complained of, has continuously been a stockholder since that time, and is a current TherapeuticsMD stockholder.

67.     The current Board of TherapeuticsMD consists of the following ten individuals: defendants Thompson, Russell, Carroll, Finizio, Milligan, Bernick, Collins, LaPenta, Segal, and Musing.  Plaintiff has not made any demand on the present Board to institute this action because such a demand would be a futile, wasteful, and useless act, as set forth below.

**Demand Is Excused Because Defendants Face a Substantial Likelihood of Liability for Their Misconduct**

68.     As alleged above, current Board members, defendants Thompson, Russell, Carroll, Finizio, Milligan, Bernick, Collins, LaPenta, Segal, and Musing, breached their fiduciary duties of loyalty by allowing and approving improper statements regarding the approvability, safety, and commercial viability of TX-004HR to be publicized in the Company's press releases and SEC filings.  For instance, in the Company's 2016 Form 10-K, the Board averred to the public that its "NDA submission was supported by the complete TX-004HR clinical program, including positive results of the phase 3 REJOICE Trial."  This is despite a distressing lack of long-term safety data that would never pass the muster of clear FDA guidelines and pharmaceutical industry standards for Phase 3 clinical trials.

69.     Furthermore, defendants Thompson, Russell, Carroll, Finizio, Milligan, Bernick, Collins, LaPenta, Segal, and Musing allowed the NDA for TX-004HR to continue even though they knew that the Phase 3 clinical trial was deficient.  TX-004HR was one of TherapeuticsMD's most important products and it was vital to the Company's financial prospects because it would have become the first of the Company's hormonal therapy drugs utilizing its proprietary SYMBODA technology to reach the U.S. market.  Given TX-004HR's significance to the Company, the Board would have closely followed all important developments regarding the drug.  Specifically, the Board would have been aware of deficiencies with the drug's clinical trials that would not meet FDA guidelines.  Furthermore, the Board would have been acutely aware of how much capital was being spent on TX-004HR's deficient clinical trial.  However, the Board chose not to disclose these important facts to the public.  Accordingly, demand is excused because a majority of the Board faces a substantial likelihood of liability.

70.     Defendants LaPenta, Russell, Collins, and Segal, as members of the Audit Committee, reviewed and approved the improper statements and earnings guidance.  The Audit Committee's Charter provides that it is responsible for assisting the Board in overseeing the Company's accounting and financial process.  The Audit Committee Charter provides that it is responsible for "[t]he integrity of the Company's financial statements, [t]he Company's compliance with legal and regulatory requirements..., [and] [t]he performance of the Company's internal audit function...."   Further, the Audit Committee is charged with reviewing the Company's financial statements.  Thus, the Audit Committee Defendants were responsible for knowingly or recklessly allowing the improper statements related to the Company's financial health, which was dependent on the approval of TX-004HR.  Moreover, the Audit Committee Defendants reviewed and approved the improper press releases made to the public.  Despite their knowledge or reckless disregard, the Audit Committee Defendants caused these improper statements.  Accordingly, the Audit Committee Defendants breached their fiduciary duty of loyalty and good faith because they participated in the wrongdoing described herein.  Thus, the Audit Committee Defendants face a substantial likelihood of liability for their breach of fiduciary duties so any demand upon them is futile.

71.     The principal professional occupation of defendants Finizio, Bernick, and Milligan is their employment with TherapeuticsMD, pursuant to which they have received and continue to receive substantial monetary compensation and other benefits as alleged above.  Accordingly, defendants Finizio, Bernick, and Milligan lack independence from defendants Thompson, Russell, Carroll, Collins, LaPenta, Segal, and Musing due to their interest in maintaining their executive positions at TherapeuticsMD.  This lack of independence renders defendants Finizio, Bernick, and Milligan incapable of impartially considering a demand to commence and vigorously prosecute this action.  TherapeuticsMD paid defendants Finizio, Bernick, and Milligan the following compensation:

Defendant Finizio

| Year | Salary | Bonus | Non-Equity Incentive Plan Compensation | All Other Compensation | Total |
|---|---|---|---|---|---|
| 2016 | $600,000 | $50,000 | $600,000 | $13,347 | $1,263,347 |

Defendant Bernick

| Year | All Other Compensation | Total |
|---|---|---|
| 2016 | $637,500 | $637,500 |

Defendant Milligan

| Year | Salary | Non-Equity Incentive Plan Compensation | All Other Compensation | Total |
|---|---|---|---|---|
| 2016 | $450,000 | $315,000 | $19,079 | $784,079 |

Accordingly, defendants Finizio, Bernick, and Milligan are incapable of impartially considering a demand to commence and vigorously prosecute this action because they have an interest in maintaining their principal occupations and the substantial compensation they receive in connection with those occupations.  Demand is futile as to defendants Finizio, Bernick, and Milligan.

72.    Plaintiff has not made any demand on the other stockholders of TherapeuticsMD to institute this action since such demand would be a futile and useless act for at least the following reasons:

(a)    TherapeuticsMD is a publicly held company with over 203.9 million shares outstanding and thousands of stockholders;

(b)    making demand on such a number of stockholders would be impossible for plaintiff who has no way of finding out the names, addresses, or phone numbers of stockholders; and

(c)    making demand on all stockholders would force plaintiff to incur excessive expenses, assuming all stockholders could be individually identified.

## COUNT I

### Against the Individual Defendants for Breach of Fiduciary Duty

73.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

- 24 -

74.     The Individual Defendants owed and owe TherapeuticsMD fiduciary obligations. By reason of their fiduciary relationships, the Individual Defendants owed and owe TherapeuticsMD the highest obligation of good faith, fair dealing, loyalty, and due care.

75.     The Individual Defendants and each of them, violated and breached their fiduciary duties of candor, good faith, and loyalty.

76.     The Individual Defendants breached their fiduciary duties to the Company by, among other things, making, issuing, approving, or failing to correct the improper statements detailed herein.

77.     The Individual Defendants, as directors of the Company, owed TherapeuticsMD the highest duty of loyalty.  These defendants breached their duty of loyalty by recklessly permitting the improper statements that touted the approvability, safety, and commercial viability of TX-004HR.  Individual Defendants knew or were reckless in not knowing that: (i) that the Company's NDA submission for TX-004HR was deficient; (ii) that the Company's NDA submission for TX-004HR was not supported by the complete TX-004HR clinical program; and (iii) the Company's deficient NDA would likely cause a delay of the FDA's potential approval of the TX-004HR NDA.  Accordingly, the Individual Defendants breached their duty of loyalty to the Company.

78.     The Audit Committee Defendants LaPenta, Russell, Collins, and Segal, breached their fiduciary duty of loyalty by approving the statements described herein which were made during their tenure on the Audit Committee, which they knew or were reckless in not knowing contained improper statements and omissions.  The Audit Committee Defendants completely and utterly failed in their duty of oversight, and defendants LaPenta, Russell, Collins, and Segal failed in their duty to appropriately review financial results, as required by the Audit Committee Charter in effect at the time.

79.     As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, TherapeuticsMD has sustained significant damages, as alleged herein.  As a result of the misconduct alleged herein, these defendants are liable to the Company.

80.     Plaintiff, on behalf of TherapeuticsMD, has no adequate remedy at law.

## COUNT II

### Against the Individual Defendants for Waste of Corporate Assets

81.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

82.     The Individual Defendants breached their fiduciary duties to the Company by certifying the transfer of substantial corporate assets despite serious deficiencies with TX-004HR's clinical program, for which no consideration at all will be received.  As a result of the deficient Phase 3 clinical trial for TX-004HR, the FDA put an indefinite stop to the development of one of TherapeuticsMD's most important and developed drug candidates by rejecting the Company's NDA.  In the process of developing this deficient clinical trial, the Board approved the expenditure of approximately $42 million in research and development costs from the project's inception in August 2014 until December 2015.  Moreover, with the indefinite halt of TX-004HR's NDA by the FDA, the Company will expend further assets to revive the drug's Phase 3 clinical trial before the FDA approves the drug and it can become profitable.  This will take years.  By making, issuing, approving, or failing to correct the deficient Phase 3 clinical trial for TX-004HR, the Individual Defendants have committed corporate waste in an exchange that no business person of ordinary and sound judgment could conclude resulted in adequate consideration.

83.     As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

84.     Plaintiff, on behalf of TherapeuticsMD, has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, on behalf of TherapeuticsMD, demands judgment as follows:

A.     Against all of the defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the defendants' breaches of fiduciary duties, and waste of corporate assets;

B.     Directing TherapeuticsMD to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect TherapeuticsMD and its stockholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for stockholder vote, resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be

necessary to place before stockholders for a vote of the following Corporate Governance Policies:

     1.    a proposal to strengthen the Company's controls over the development of clinical trials and developmental drugs;

     2.    a proposal to strengthen TherapeuticsMD's oversight of its disclosure procedures;

     3.    a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater stockholder input into the policies and guidelines of the Board;

     4.    a provision to permit the stockholders of TherapeuticsMD to nominate at least three candidates for election to the Board;

C.    Extraordinary equitable and/or injunctive relief as permitted by law, equity, and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on, or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of TherapeuticsMD has an effective remedy;

D.    Awarding to TherapeuticsMD restitution from defendants, and each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by the defendants;

E.    Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

F.    Granting such other and further relief as the Court deems just and proper.

<b><u>JURY DEMAND</u></b>

Plaintiff demands a trial by jury.

Dated: May 30, 2017                       Respectfully submitted,

                                        **SAXENA WHITE P.A.**

                                        By:    */s/ Lester R. Hooker*   
                                          Lester R. Hooker (FL Bar No. 32242)
                                          5200 Town Center Circle, Suite 601
                                          Boca Raton, FL 33486
                                          Telephone: (561) 394-3399
                                          Facsimile:  (561) 394-3382
                                          E-mail: lhooker@saxenawhite.com

**ROBBINS ARROYO LLP**
Brian J. Robbins
Felipe J. Arroyo
Shane P. Sanders
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
E-mail: brobbins@robbinsarroyo.com
        farroyo@robbinsarroyo.com
        ssanders@robbinsarroyo.com

Attorneys for Plaintiff